UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ALFREDO GONZALEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-11 |
| | § | |
| D A ALLEN, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is a lawsuit Plaintiff Alfredo Gonzales (TDCJ #1770467) filed against Texas City police officers Darren A. Allen, William R. Goodwin and Cay A. Pope, alleging use of excessive force during his arrest. Defendants seek summary judgment, arguing that they are entitled to qualified immunity and that the evidence does not support a constitutional violation. After considering the summary judgment motion and exhibits, the response and applicable law, the Court **GRANTS** the motion for the reasons that follow.

### I. BACKGROUND

On March 16, 2010, Officers Allen, Pope and Goodwin responded to a dispatch call stating that three gunmen had forced a vehicle off the road and threatened the occupants at gunpoint. (DE 17, Exh. 1 at 5-6). It was also reported that shots were fired[1] and the suspects were fleeing. Alfredo Gonzalez was

[1]The gunshots were first believed to have been fired by the assailants but were later determined to have

reportedly one of the assailants.

The assailants were located traveling south on State Highway 146. They fled the police, resulting in a high speed chase on Interstate 45 towards Houston. The Houston Police Department, Galveston County Sheriff's Department and League City Police Department aided in the pursuit. A strip of tire spikes placed in the road ultimately disabled the assailants' vehicle and caused it to stop. All three assailants fled. A League City police officer apprehended one of the assailants, while officers Pope, Goodwin, and Allen chased Gonzalez. When Officer Allen gained distance on him, Gonzalez turned around and Allen was close enough to strike him in the head area with the butt of his gun.

The parties disagree about what happened once Gonzalez hit the ground. According to the officers, Officer Goodwin sat on Gonzalez's back and ordered him to give up his hands, which were under his body. Gonzalez refused and resisted Goodwin and Allen's efforts to gain control of his hands. Officer Goodwin struck Gonzalez several times in the back of the head with a closed fist, and Officer Pope kicked him in the left shoulder area until they were able to gain control of Gonzalez' left arm. Gonzalez continued to resist. Officer Pope then struck Gonzalez twice in the head with a closed fist until Gonzalez produced his

---

been fired by a neighbor who was observing the incident and fired his gun to scare away the assailants. (DE 17-1 at 22-23). In evaluating the reasonableness of the officers' actions, the Court considers what they had reason to believe at the time—that a suspect had fired shots.

right arm to be handcuffed. (DE 17-1 at 16-18; 38-39; and 42-45).

Gonzalez denies resisting arrest once he hit the ground. In his response to the summary judgment motion, he states that he was struck with the butt of a gun, lost consciousness, and awoke with an "awareness of feeling and witnessing the excessive use of force by defendant officers," before being forced into a police car. (DE 20) In the voluntary statement he provided after his arrest, Gonzalez stated that one of the officers twisted his wrist and slammed him to the ground while another hit him in the head with a flashlight when he tried to move his hand from underneath his body. He further stated that after he told the officers he did not know the whereabouts of the other assailants, "another cop hit me right in the face with his fist, and that's how I got this black eye and the bumps from the flashlight are still on the back of my head." DE 17-1 at 65-66.

Gonzalez and the other two assailants were booked into the Texas City jail. Photographs were taken of Gonzalez (DE 17-1 at 175-89 & 226-32) and medical staff examined him. The photographs show small bruises on Gonzalez' cheekbones, a small scrape on his left chin, a small abrasion near his left knee, and a few shallow cuts on his scalp. Gonzalez denied needing medical care. (DE 17, Exh. 1 at 85).

## II. SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV. P. 56(a). A dispute is "genuine" if the evidence "is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact issue is "material" if its resolution could affect the outcome of the action. *Id.* When reviewing a motion for summary judgment, all facts and inferences are construed in the light most favorable to the nonmovant. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).

## III. THE EXCESSIVE FORCE CLAIM

Claims of excessive force in the course of an arrest implicate the Fourth Amendment right to be free from unreasonable seizure. To establish an excessive force claim, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." *Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010) (citation and internal quotations omitted). Such force must be determined to be "clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). Though the ultimate reasonableness inquiry is an objective one, "an officer's subjective motivation and intent are irrelevant." *Hill v. Carroll Cnty.*, 587 F.3d 230, 234 (5th Cir. 2009) (citation omitted.). The Court must measure the force used with the severity of the crime, "whether the suspect poses an immediate

threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The reasonableness of the use of force is to be judged "from the perspective of a reasonable office on the scene, rather than the 20/20 vision of hindsight." *Id.*

The record viewed in plaintiff's favor on disputed fact issues, but from the officers' perspective, shows the following: Gonzalez was one of three individuals involved in an armed attempted carjacking at which shots were fired. He then fled from police on a high speed chase that eventually involved four law enforcement agencies. The car chase ended only when tire spikes were placed on a heavily travelled interstate to disable the vehicle in which Gonzalez was riding. With the car chase at an end, the foot chase began. Gonzalez and his associates ignored the officers' orders to stop. When Officer Allen gained distance on Gonzalez, Allen had reason to believe that Gonzalez might be armed and dangerous—and indeed might have already fired shots that evening— and needed to be taken to the ground to control him. Once on the ground, even accepting Gonzalez's version that he was no longer resisting, the officers had a reasonable basis to continue using force until Gonzalez was handcuffed and disarmed.

Given the extremely violent nature of the conduct for which Gonzalez was being pursued and his extensive efforts to flee law enforcement, the force used in

subduing him was reasonable. *Graham*, 490 U.S. at 397 (noting the reasonableness of force must be evaluated against the backdrop of a plaintiff's broader interaction with law enforcement). A use of force is reasonable when it involves a "measured and ascending response" to a plaintiff's non-compliance. *See Galvan v. City of San Antonio*, 435 Fed. Appx. 309, 311 (5th Cir. 2010). In *Poole v. City of Shreveport*, Poole ignored officers' commands to turn around and give up his arm to be handcuffed. When Poole continued to resist, one of the officers tasered him and the officers were able to restrain him. The Fifth Circuit held that "because Poole, upon refusing to turn around and be handcuffed, posed an "immediate threat to the safety of the officers" and "actively resisted" the officers' instructions, the use of force was not "clearly excessive." *Poole*, 691 F.3d 624 (5th Cir. 2012). *Poole* involved force used during a traffic stop after police had already searched the plaintiff and discovered no weapons. The safety concerns in this case, in which Gonzalez had participated in an armed carjacking and had not yet been searched for weapons, were far greater. This case involves the "tense, uncertain, and rapidly evolving" situation contemplated by the Supreme Court in *Graham*. 490 U.S. at 396-97. The defendants had probable cause to fear for their safety and the split-second judgments they made in a hostile and dangerous environment were not unreasonable. *Id*.

Because the factual record viewed in Gonzalez's favor does not support a finding of excessive force, Defendants' motion for summary judgment is **GRANTED.** This case is **DISMISSED** with prejudice.

All pending motions, if any, are **DENIED.**

It is so **ORDERED**.

**The Clerk will provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, fax: 936-437-4793; and (3) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

**SIGNED this 12th day of September, 2013.**

Gregg Costa
United States District Judge